IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JESSICA A. SHERROD,                                 ) | Civil Action No. 3:12-3026-MGL-JRM |
|                                                                    ) | |
| Plaintiff,                      ) | |
|                                                                    ) | |
| v.                                                              ) | |
|                                                                    ) | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN,[1] ACTING         ) | |
| COMMISSIONER OF                                   ) | |
| SOCIAL SECURITY,                                     ) | |
|                                                                    ) | |
| Defendant.                   ) | |
|                                                                    ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for SSI on September 30, 2008. Tr. 146-148. She alleges disability beginning on March 1, 2007. Tr. 146. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). In August 2010, the Social Security Administration ("SSA") informed Plaintiff that she had a hearing scheduled for October 8, 2010 in Vidalia, Georgia. Tr. 83. Three days before the hearing, Plaintiff's counsel informed the SSA that Plaintiff had moved to Bluffton, South Carolina and requested a

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this lawsuit.

transfer of records to the appropriate SSA office. Tr. 110. A hearing notice dated December 15, 2010 reflects that a hearing was scheduled for January 14, 2011 in North Charleston, South Carolina. Tr. 111. By letter dated January 10, 2011, Plaintiff requested that the hearing be moved out of state to a location (Savannah, Georgia) closer to her home. This request was denied by the ALJ. On January 14, 2011, the hearing was held and Plaintiff did not appear. Plaintiff's representative and a vocational expert ("VE") appeared and testified at the hearing. Tr. 45-55. The ALJ issued a decision on February 25, 2011, finding Plaintiff was not disabled because the ALJ concluded that work exists in the national economy which Plaintiff can do.

Plaintiff was twenty-eight years old at the time of the ALJ's decision. She has an eighth grade education with past work as a cashier and stocker. Tr. 191, 195, 260. Plaintiff alleges that she became disabled due to bipolar affective disorder, post traumatic stress disorder ("PTSD"), general anxiety disorder, and a personality disorder. Tr. 30, 190.

The ALJ found (Tr. 25-38):

1. The claimant has not engaged in substantial gainful activity since September 9, 2008, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: bipolar affective disorder, post traumatic stress disorder, general anxiety disorder, and a personality disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels. She is limited to performing simple routine, repetitive tasks and is unable to perform work requiring interaction with the general public. She must avoid more than casual interaction with co-workers, and

        must work in a stable environment without a strict production standard with infrequent changes in the work setting or requirements.

5. The claimant was born on [], and was 26 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

6. The claimant has a marginal education and is able to communicate in English (20 CFR 416.964).

7. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

8. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

9. The claimant has not been under a disability, as defined in the Social Security Act, since September 9, 2008, the date the application was filed (20 CFR 416.920(g)).

The Appeals Council denied the request for review in a decision issued August 20, 2012 (Tr. 1-5), and the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action on October 19, 2012.

**STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## **MEDICAL EVIDENCE**

Plaintiff presented to Bluffton Family Medical Associates on March 19, 2007 reporting that her mood alternated between very happy and anxious to crying bouts and sadness. Tr. 281. A history of drug use (heroin and crack which she reportedly last used one year before the appointment) was noted. Id. Plaintiff appeared anxious and nervous, had a flat affect, and was tearful at times. Plaintiff was prescribed Lexapro and was instructed to return in two to three weeks for follow-up. Tr. 281-282. On April 2, 2007, Plaintiff returned stating she was feeling good, was still depressed a lot, and was very anxious. Tr. 278. A trial of Cymbalta was prescribed and Plaintiff was to return in six weeks. Tr. 279.

Plaintiff began seeing Dr. Chad Brock, a psychiatrist, on October 31, 2007. She stated that she had been living with her boyfriend and his parents for a year and had no friends. She reported past episodes of crying, throwing fits, and feeling angry before being placed on Cymbalta. Current medications were listed as Lamictal, Seroquel, and Wellbutrin. She admitted to using crack cocaine, heroin, and marijuana in the past, but stated that she was no longer using illegal drugs. Dr. Brock noted that Plaintiff's mood was angry, but that she had normal speech and motor activity. Dr. Brock's notes reflect an initial diagnosis of rule-out bipolar affective disorder; PTSD; a past history of alcohol, cocaine, and heroin dependence; and rule-out borderline personality disorder. He prescribed an increase in Plaintiff's Lamictal and also prescribed Inderal. Tr. 288-290.

On January 4, 2008, Dr. Brock noted that Plaintiff was better following a medication adjustment, with less of a feeling of being "on edge," although she still continued to be irritable. Tr.

4

287. The following month, Dr. Brock observed that Plaintiff's mental condition was overall stable. He assigned a Global Assessment of Functioning ("GAF") score of 60.[2]  Tr. 286.

Plaintiff did not seek mental health treatment again until August 8, 2008, when Dr. Brock again assigned a GAF score of 60, and noted that Plaintiff's mental health condition was overall stable. Plaintiff reported she briefly moved to Florida, but returned to Georgia. She stated she planned to work again and wanted to get her GED. Plaintiff herself reported that her mental health condition was good. Tr. 285. On September 13, 2008, Plaintiff reported experiencing periods of feeling very confident and capable and then would get down and angry when thinking of the past. Dr. Brock increased her dose of Seroquel, and assigned a GAF score of 50. Tr. 284. Plaintiff returned the next day to see Dr. Brock complaining of feeling "spacey." Dr. Brock prescribed Geodon. Tr. 283. On October 23, 2008, Plaintiff reported to Dr. Brock that she felt more paranoid. Her mood and affect were noted as anxious. Tr. 312.

---

[2]The GAF contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning, generally for the level of functioning at the time of evaluation. A GAF score between 21 and 30 may reflect that "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment." A score of 31 to 40 indicates some impairment in reality testing or communication or "major impairments in several areas," 41 to 50 indicates "serious symptoms" or "serious difficulty in social or occupational functioning," 51 to 60 indicates "moderate symptoms" or "moderate difficulty in social or occupational functioning," and 61 and 70 reflects "mild symptoms" or "some difficulty in social, occupational, or school functioning ."  Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000). It should be noted that in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders:
> [i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.

Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 16 (5th ed. 2013).

Dr. Brock saw Plaintiff in November 2008 and she reported to him she felt scared. He prescribed an increased dose of Neurontin. Tr. 311. On December 4, 2008, Plaintiff described a history of trauma including being abused as a child, being raped several times, the use of drugs and alcohol, and dancing and working for an escort service to survive. Tr. 310.

On February 2, 2009, Plaintiff saw Dr. Brock and stated that she was not doing well. He noted she had an anxious and irritable mood/affect. Ativan was prescribed and Dr. Brock assigned her a GAF score of 50. Tr. 309. On April 20, 2009, Plaintiff stated that she did not feel well and was depressed. Dr. Brock noted she was depressed and anxious. Plaintiff's medications were adjusted and she was again assigned a GAF score of 50. Tr. 308.

On May 3, 2009, Dr. Brock assigned a GAF score of 68, and noted that Plaintiff reported being afraid. Tr. 307. On June 16, 2009, Plaintiff reported having an anxiety attack in the waiting room. Dr. Brock noted her affect and mood as anxious. Tr. 306.

On August 3, 2009, Dr. Brock completed a Psychiatric/Psychological Impairment Questionnaire. Tr. 315-322. Dr. Brock listed Plaintiff's diagnoses as bipolar disorder-type I, and PTSD, and listed her prognosis as "poor." Tr. 315. He assigned Plaintiff a GAF score of 50. Id. Clinical findings included sleep disturbance, emotional lability, recurrent panic attacks, paranoia or inappropriate suspiciousness; difficulty thinking or concentrating; oddities of thought, perception, speech, or behavior; perceptual disturbances; social withdrawal or isolation; and manic syndrome. Tr. 316. Dr. Brock noted that Plaintiff's primary symptoms were mood lability with periods of depression and mania, as well as anxiety related to a history of trauma. Tr. 317. Dr. Brock stated that the symptoms and limitations detailed in the questionnaire had been present since October 2007. Tr. 322. Dr. Brock opined that Plaintiff was markedly limited in her ability to work in coordination

6

with, or proximity to others, without being distracted by them; in her ability to get along with co-workers or peers without exhibiting behavioral extremes; and in her ability to interact appropriately with the general public. He opined she was moderately limited in her ability to maintain attention and concentration for extended periods; her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; her ability to sustain ordinary routine without supervision; her ability to make simple work-related decisions; her ability to accept instructions and respond appropriately to criticism from supervisors; her ability to respond appropriately to changes in the work setting; her ability to be aware of normal hazards and take appropriate precautions; her ability to travel to unfamiliar places or use public transportation; and, her ability to set realistic goals or make plans independently. Tr. 318-320.

Dr. Brock also opined that Plaintiff experienced episodes of deterioration or decompensation in work or work-like settings that caused her to withdraw from that situation and/or experience an exacerbation of signs and symptoms evidenced by her difficulties with activities of daily living. Tr. 320. He noted her medications caused the side effect of sedation. Id. Dr. Brock thought that Plaintiff was incapable of tolerating even low stress work, and noted she had good days and bad days. Tr. 320. He estimated Plaintiff would be absent from work, on average, more than three times a month as a result of her impairments or treatment. Tr. 322.

Dr. Trina Jackson, a psychologist, conducted a consultative examination on August 30, 2009. She noted Plaintiff appeared heavily medicated and had difficulty following her questions and completing thoughts. Tr. 326. Plaintiff admitted to Dr. Jackson that she had taken extra Xanax that morning because she felt anxious. Tr. 323. Dr. Jackson noted Plaintiff spoke with little emotion, even when discussing traumatic times in her life. Tr. 323. Plaintiff reported that she had no problems with

personal care and preparing simple meals, and her medications helped to control her moods, but had not helped with her phobias. Tr. 324. Dr. Jackson assessed a GAF score of 58. Tr. 326.

On December 2, 2009, Plaintiff saw a psychiatrist, Dr. Thomas Reid Rumble. Tr. 327-331. Dr. Rumble noted that her mood was predominantly depressed. Plaintiff complained she had difficulty concentrating with racing thoughts, and was irritable and easily "set off" when her mood became angry. Tr. 329. On examination, Dr. Rumble noted a history of childhood trauma, hypervigilence, vivid recollections, nightmares, episodic anxiety, obsessive-compulsive disorder behaviors, a predominantly depressed mood, rapid thoughts, decreased concentration, racing thoughts, irritability with periods of anger, occasional auditory hallucinations, occasional feelings of something crawling under her skin, limited insight, and impaired judgment. Tr. 329-330. Dr. Rumble assigned Plaintiff a GAF score of 51. Tr. 330. Dr. Rumble's plan included a significant adjustment in her psychiatric medication, including the gradual removal of Xanax from her regimen, and intensive individual therapy. Tr. 330.

Plaintiff reported to Dr. Rumble on January 20, 2010, that she was feeling great and had not had any major mood or anxiety complaints. Tr. 350. She reported she was no longer taking Seroquel or Xanax. Id. Dr. Rumble made no changes in her diagnoses and refilled her medications (Tr. 350-351). At a follow-up on February 22, 2010, Plaintiff stated she was doing "pretty well," but she had breakthrough anxiety and reported difficulty sitting still long enough to watch much TV. She also described symptoms of forgetfulness, having drastic thoughts such as throwing things, "suffocation attacks" when eating, and feeling lightheaded when she would go out. Tr. 352. A mental status exam noted she was mildly histrionic and had residual anxiety symptoms. Tr. 352-353. On

April 30, 2010, Plaintiff reported to Dr. Rumble problems with alternating hyperactivity and depression, and that she was also having some insomnia. Tr. 354.

On March 5, 2010, state agency reviewing psychologist Dr. Clare Rubin reviewed Plaintiff's medical records and opined in a mental residual functional capacity assessment that Plaintiff could understand, remember, and carry out simple, but not detailed instructions; she should be capable of concentration for up to two hours with breaks; and her limitations relating to understanding, memory, and sustained concentration and persistence were not substantial. Tr. 334; see Tr. 332.  Dr. Rubin also opined that Plaintiff might have episodic problems dealing with the public, supervisors, and co-workers due to psychiatric symptoms, but that they were not substantial limitations. Tr. 334. Furthermore, Dr. Rubin opined that Plaintiff had no substantial limitations in regards to workplace adaptation. Tr. 334.

On August 10, 2010, Dr. Brock opined that Plaintiff was totally disabled without consideration of any past or present drug or alcohol use.  He stated he last saw her in August 2088 and did not believe she was using (illicit) drugs or alcohol during the time he treated her.  Tr. 356.

## HEARING TESTIMONY/FUNCTION REPORTS

On October 23, 2008, Plaintiff completed a function report for the SSA.  She reported that she lived with friends, and spent her time playing computer games, surfing the Internet, cooking, occasionally walking around the block, and keeping something on with loud volume to drown out the sounds of others. Tr. 181. She reported chatting and sitting around with several friends daily. Tr. 185.  She also stated that interaction with others upset her. Id.  She noted she had no problems taking care of personal hygiene needs. Tr. 182.

9

Plaintiff completed another function report on May 20, 2009. She noted that she did household chores including cleaning table tops, vacuuming, and sweeping, sometimes with the help from a friend. Tr. 213. She reported having conversations with roommates several times per day. Tr. 215.

On January 31, 2010 Plaintiff completed a function report in which she stated she was taking care of a pet dog along with a friend. Tr. 221-222. She noted she talked on the phone daily with her family (Tr. 225), prepared simple meals, and occasionally swept her home and did dishes (Tr. 223).

Plaintiff did not appear at her scheduled January 14, 2011 hearing, even though Plaintiff's counsel had previously communicated to her the ALJ's denial of her request to hold the hearing out of state, at a location closer to her home. Tr. 47-48. Plaintiff's representative did appear at the hearing. Counsel stated that Plaintiff said she lived over two hours from the hearing site, she would not be able to make the trip, and she would like the case transferred to Savannah (approximately thirty-five minutes from her home). The ALJ stated that Plaintiff's address put her in the Charleston division, he did not find good cause for her not coming to the hearing, and he would proceed with the hearing. Tr. 47. The ALJ asked a VE to consider a hypothetical person of Plaintiff's age and educational level, with no history of substantial gainful work activity, and with the residual functional capacity ("RFC") found by the ALJ (Tr. 32) in her decision. See Tr. 52-53. The VE testified that such a person could perform jobs such as laundry operator (3,190 positions in South Carolina and 211,000 nationwide), coupon recycler (270 positions in South Carolina and 15,900 nationwide), and surveillance system monitor (14,400 in South Carolina and 1,028,000 nationwide). Tr. 53.

**DISCUSSION**

Plaintiff alleges that the ALJ: (1) failed to follow the treating physician rule; (2) failed to properly determine her RFC; (3) deprived her of her due process right to testify; (4) failed to properly evaluate her credibility; and (5) relied upon flawed VE testimony. The Commissioner contends that the ALJ's decision is supported by substantial evidence[3] and is legally sound.  Specifically, the Commissioner argues that: (1) the ALJ acted within her discretion in finding that Plaintiff had not shown good cause for holding the ALJ hearing out of state; (2) the ALJ's RFC determination is supported by substantial evidence and comports with all relevant law; (3) the ALJ properly assigned little weight to the opinion of Plaintiff's treating psychiatrist; (4) the ALJ properly relied on the VE's testimony as it was based on Plaintiff's RFC; and (5) the ALJ's evaluation of Plaintiff's credibility was supported by substantial evidence and comports with all relevant law.

A.     Treating Physician

Plaintiff alleges that the ALJ erred by failing to follow the treating physician rule. She argues that the ALJ failed to give sufficient reasons for rejecting the opinion of treating psychiatrist Dr. Brock. Plaintiff argues that the fact she did not require emergency room treatment or hospitalization for her psychiatric conditions does not show that she is not psychiatrically

---

[3]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966).  It must do more, however, than merely create a suspicion that the fact to be established exists.  Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

11

disabled, the ALJ cited no evidence to show that the improvement in her mental impairments was of such a significant degree that she could work full-time on a sustained basis, and the ALJ erred in suggesting that Dr. Brock's opinions conflicted with findings from Dr. Rumble because Dr. Rumble never gave an opinion as to her functioning and no other significant inconsistency was identified. Plaintiff argues that Dr. Brock's opinions were supported with appropriate clinical and diagnostic psychiatric evidence including that she had a sleep disturbance; emotional lability; recurrent panic attacks; paranoia or inappropriate suspiciousness; difficulty thinking or concentrating; oddities of thought, perception, speech, or behavior; perceptual disturbances; social withdrawal or isolation; and manic syndrome. Additionally, Plaintiff alleges that the ALJ failed to weigh Dr. Brock's opinions pursuant to the factors in 20 C.F.R. § 416.927. The Commissioner contends that the ALJ properly discounted Dr. Brock's opinion that Plaintiff was incapable of performing even low-stress jobs because his opinion is inconsistent with substantial evidence that supports the ALJ's RFC determination and because there was lack of emergency room treatment or hospitalization for Plaintiff's psychiatric conditions. The Commissioner argues that the ALJ also properly discounted Dr. Brock's opinion based on Dr. Rumble's opinions.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527 and 416.927; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the

12

testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount Dr. Brock's opinion is not supported by substantial evidence. It appears the ALJ discounted the opinion in large part based on opinions from Dr. Rumble. The ALJ stated she gave greater weight to the opinions of Dr. Rumble. Tr. 34. It is unclear what opinions were rendered by Dr. Rumble. The ALJ does not discuss any such opinions in her decision. See Tr. 32-34. The Commissioner appears to argue that the opinions to which the ALJ refers are Dr. Rumble's assigned GAF scores (current 51 and best of the last year 55) which was indicative of only moderate symptoms; his finding that Plaintiff was alert, fluent, articulate, had adequate vocabulary and general fund of information and had the ability to do sample cognitive tasks (Tr. 330); and notations that Plaintiff reported improvement. These do not appear to be opinions as to Plaintiff's limitations or level of functioning. The ALJ did not discuss Plaintiff's GAF scores in her decision. Additionally, it is unclear that Dr. Rumble's assigned GAF scores, which ranged from 51 to 57, showed any

13

significant improvement over those of Dr. Brock, which ranged from 50 to 60.[4] Although Dr. Rumble noted Plaintiff's self-reported improvement, he only treated Plaintiff for five months and noted problems such as limited insight, some impaired judgment, severe psychosocial stressors (Axis IV), and social self isolation (Tr. 330, 350). Plaintiff, although she reported improvement to Dr. Rumble after her initial appointment with him, also complained to him of breakthrough anxiety including fear of choking while eating, difficulty sitting still, being very forgetful, feeling lightheaded and out of place if she tried to go to the grocery store, suffocation attacks, being a little hyperactive, and being apprehensive when in crowds. Tr. 352, 354. This action should be remanded to the Commissioner to evaluate Dr. Brock's opinion in light of all of the evidence and controlling law.

B.     RFC

Plaintiff alleges that the ALJ erred in determining Plaintiff's mental RFC because it is unclear from the decision what evidence was relied upon. She argues that the ALJ failed to cite to any medical opinions or persuasive non-medical evidence that supports the RFC determination and failed to provide a narrative discussion of any evidence that supported the specific limitations found. The Commissioner contends that the ALJ's RFC determination is supported by substantial evidence and comports with all relevant law. In particular, the Commissioner argues that the RFC is supported by Dr. Rubin's (state agency psychologist) opinion and by a substantial number of the psychiatric treatment notes.

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative

---

[4]Although the GAF scores do not have a direct correlation to the severity requirements of a mental disorder listing, 65 Fed. Reg. 50746, 50764-5 (2000), they may be evidence of a claimant's degree of functioning.

14

discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96-8p. The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. Id.

As it is unclear that the ALJ's decision to discount Dr. Brock's opinion is supported by substantial evidence, it is unclear that the ALJ properly determined Plaintiff's RFC. It is also unclear from the decision how the ALJ determined Plaintiff's mental RFC. The ALJ does not state what weight she gave to the opinion of state agency psychologist Dr. Rubin and appears to admit that Dr. Rubin did not review all of the medical evidence of record.[5]  See Tr. 34. Dr. Rubin opined that Plaintiff had moderate restrictions in her activities of daily living and had one to two episodes of decompensation, each of extended duration. Tr. 346. The ALJ found that Plaintiff had no limitations of activities of daily living based on improvement in her condition, but does not identify evidence to support that there are no limitations. The ALJ stated that there was insufficient evidence to determine whether Plaintiff experienced episodes of decompensation of extended duration, but provides no basis for this conclusion.

It is recommended that this action be remanded to the Commissioner with instructions to give the Plaintiff an opportunity for a new hearing.[6] Upon remand, the ALJ should also consider

---

[5] There is no indication that Dr. Rubin examined all of Dr. Rumble's records or Dr. Brock's August 2010 opinion.

[6] As it is recommended that this action be remanded to the Commissioner, it is not necessary to address Plaintiff's argument that she was denied due process because she was not able to testify at a hearing before the ALJ.

15

Plaintiff's remaining allegations of error (including those concerning credibility), and to proceed with the sequential process, including obtaining VE testimony, if necessary.[7]

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to properly consider the opinion of Plaintiff's treating psychiatrist (Dr. Brock), determine her RFC in light of all of the evidence, consider Plaintiff's remaining allegations of error, and to continue the sequential evaluation process if necessary.

Based on the foregoing, it is RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

November 7, 2013
Columbia, South Carolina

---

[7]Plaintiff argues that the ALJ erred in not accepting the VE's testimony (see Tr. 54) that if Plaintiff would not be able to perform any work if she had the limitations outlined by treating physician Dr. Brock. If the decision to discount Dr. Brock's opinion is supported by substantial evidence, the ALJ is not required to include the additional limitations proposed by Plaintiff's counsel because the ALJ did not find these limitations to supported by the record. See Lee v. Sullivan, 945 F.2d 689, 698-94 (4th Cir. 1991)(noting that a requirement introduced by claimant's counsel in a question to the VE "was not sustained by the evidence, and the vocational expert's testimony in response to the question was without support in the record"); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). As discussed above, however, it is unclear whether the ALJ's decision to discount Dr. Brock's opinion is supported by substantial evidence.

16